## PHIL., NEWTOWN ETC. R. CO.'S APPEAL.

### [P. N. & N. Y. R. CO. v. W. F. SNYDER, ET AL.]

APPEAL FROM THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued March 23, 1888—Decided April 23, 1888.

1. In 1872 a railroad company acquired a portion of the roadway of a turnpike company incorporated in 1842, for the purpose of using it as a right of way upon which to lay its tracks. No tracks were laid, but by subsequent legislative authority the railroad company continued the use of the road as a turnpike and the collection of tolls thereon: *Held,*
That under the act of June 2, 1887, P. L. 306, by proceedings in the Quarter Sessions, the turnpike road might be condemned to public use so as to free it from tolls and open it to public travel, until the railroad company exercised its right to lay down its tracks.

Before PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; GORDON, C. J., and TRUNKEY, J., absent.

No. 196 January Term 1888, Sup. Ct.; court below, No. 865 September Term 1887, C. P. No. 4.

On November 19, 1887, the Philadelphia, Newtown & New York Railroad Company filed a bill in equity against W. Fred. Snyder and others, petitioners, and Henry M. Dubois, master, and Robert C. V. Meyers and others, viewers. The bill in substance averred:

That the Philadelphia and Montgomery County Railroad Company was incorporated by the act of April 2, 1860, P. L. 677, with power to build a railroad beginning on or north of Berks street, between Front and Sixth, thence by any street to Lehigh avenue and Second street, and thence along Second street and road of the Kensington and Oxford Turnpike Co. (incorporated by act of March 17, 1842, P. L. 110), through Olney to any point on said turnpike in the Twenty-third ward, with power to make such arrangements with said turnpike company as might be mutually agreed upon by lease, purchase or otherwise.

That by certain other acts of assembly, act of March 23, 1865, P. L. 674; act of February 6, 1872, P. L. 85; act of March 20, 1872, P. L. 447; act of January 29, 1873, P. L. 104, the name was changed and its powers extended so as to allow it to construct a single or double track railroad upon the macadamized portion of said turnpike road, then constructed from Lehigh avenue and Second street to a point north of Erie avenue.

That by an agreement dated May 15, 1872, the plaintiff company had acquired by purchase that part of said turnpike lying south of Rising Sun lane, which sale was confirmed by the act of April 1, 1873, P. L. 460, and that, pursuant to its authority, in 1873 the plaintiff located its railroad along said turnpike as far south as Lehigh avenue and commenced the actual construction thereof from a point thereon about Erie avenue, where a temporary connection was made with the railroads of the Connecting and North Penn. Railroad companies, by which only was the plaintiff enabled to reach the city.

That the portion of said turnpike, between Erie and Lehigh avenues, along which the plaintiff's roadway had not been

actually constructed, by the said acts of assembly, contract and location, became a sectional part of the plaintiff's right of way upon which to construct a double track railroad; that the width of the macadamized part of said turnpike was about thirty feet, the whole of which would be required to be occupied in the construction of said railroad, as was intended by the plaintiff company.

That the privilege of completing the plaintiff's road to the terminus named in its charter was of incalculable value, to give it an independent road into the city and enable it to establish its own depot at Lehigh avenue, and the plaintiff could not obtain any other right of way into the city south of Erie avenue without an expenditure of money which would practically make the undertaking impossible.

That on October 14, 1887, under the act of June 2, 1887, P. L. 306, a petition was filed in the Court of Quarter Sessions of Philadelphia county, setting out the incorporation of said turnpike company, the construction by it of a turnpike road, the sale and conveyance to the plaintiff of the part south of Rising Sun lane; that the plaintiff was receiving tolls for travel upon the part purchased; that the northern part was free from tolls under certain proceedings, and that it would be for the interest of the people of the county that that part of the turnpike road belonging to the plaintiff should become a public road, and upon said petition a master and a jury of view had been appointed; that notwithstanding there was no warrant in the said act of assembly for the condemnation of said portion of said turnpike, and that the said act was not intended to apply to a case where a part of a turnpike had been lawfully purchased by a railroad company for a part of its roadway, the said petitioners and the said master and jury were about to proceed under the said act to condemn the plaintiff's property: Praying,

1. That it might be declared that the said act of June 2, 1887, does not apply to that part of said turnpike road belonging to the plaintiff between Erie and Lehigh avenues in Philadelphia, and that it does not authorize the condemnation thereof.

2. For an injunction restraining the petitioners and the master and viewers from meeting, hearing, determining or

reporting upon the petition or in any manner proceeding thereunder.

To this bill the defendants at once demurred upon the grounds following:

1. That the plaintiff set forth no equitable right, but only an alleged legal defence to a proceeding at law, and that its remedy in the proceedings at law was full and adequate.

2. That the ownership of the plaintiff of the franchise of building a railroad on certain highways was no answer to the freeing of one of said highways from tolls.

3, 4. That the franchise of the plaintiff to build a railroad on said turnpike was distinct from that to collect tolls, and the former does not affect the commonwealth's right over the other.

5. That the petition only sought to relieve the turnpike from tolls, and not to deprive the plaintiff of any power which it has or may have to construct a railroad thereon.

On December 12, 1887, the motion for an injunction was refused, the demurrer sustained and bill dismissed, ARNOLD, J., delivering the opinion:

The Kensington & Oxford Turnpike Company was chartered in 1842. It constructed a turnpike road from Second street and a point near the present Lehigh avenue, on the bed of the old Second street road, running northwardly through the county of Philadelphia. The Philadelphia, Newtown & New York Railroad Company, by an amendment to its charter obtained in 1872, is authorized to construct a single or double railroad track on the macadamized portion of the Kensington & Oxford Turnpike road. In May, 1872, the railroad company purchased from the turnpike company the right to lay railroad tracks on the turnpike road from Rising Sun lane to the southern terminus thereof at Lehigh avenue, and also the right of way and franchise of the turnpike company. The railroad company laid a track on a portion of the turnpike road extending from Rising Sun lane down to about Erie avenue, but from that point south to Lehigh avenue, a distance of about one mile, no railroad tracks have been laid. The railroad company maintains the turnpike as a pay road, and demands and collects tolls for the use of it as a turnpike under

the authority given by another amendment to its charter obtained April 1, 1873, since when it has had the two franchises of a railroad and a turnpike company. The citizens of the vicinity have filed a petition to have the turnpike freed from tolls under the act of June 2, 1887, P. L. 306, and it is to restrain further proceedings upon said petition that this bill has been filed.

Second street is one of the main streets of the city and is on the plotted plans thereof, with city lots laid out and dwellings built upon it. There are no railroad tracks on that part of it which the petitioners desire to have freed from tolls.

The cases cited by the plaintiff do not rule this case. Conceding that a municipal corporation has no power to lay out a street longitudinally on ground on which a railroad company has lawfully laid its tracks, as was held in the case of The New Jersey Southern Railroad Co. v. Long Branch, 39 N. J. L. 28, it does not follow that the municipal government may not take and use an old turnpike as a street, so long as the railroad company has no tracks or essential buildings on it. In the case of The P. W. & B. R. Co. v. Philadelphia, 9 Phila. 563, it was held by PAXSON, J., that a city government may lay out streets through the depot grounds of a railroad company, in such a manner as not to destroy or essentially impair the franchise of the railroad company.

The act of assembly for freeing turnpikes from toll acts upon the turnpike franchise only, and not upon the owner or any other franchises it may possess. The right of the railroad company to lay railroad tracks on the turnpike bed does not prevent the citizens of the vicinity from proceeding to have the turnpike made a public road free of tolls, until the company sees fit to exercise its right. The fact that after condemnation and payment of the damages the turnpike will be a public road, to be repaired and maintained at the public expense, presents no obstacle to the proceedings to abolish the toll-gates on it. That is the natural as well as the legal consequence of the proceedings. A franchise is not more sacred than private property in land under patent: Commonwealth v. Penn. Canal Co., 66 Pa. 47. A turnpike franchise must yield to the sovereign right when public exigencies require it. Plan of Kensington, 2 R. 445; Bonaparte v. Camden & Amboy R.

Co., 1 Bald. 205; and it may be taken under a general statute: Twenty-second St., 102 Pa. 108.

Removing the gates and freeing the street from turnpike tolls will not bind the company to anything more than that which we now decide, to wit: that under the act of 1887 a turnpike road may be condemned to public use, without regard to the ownership of it, or the other rights which the owner may have and hold in abeyance. The street may be changed from a turnpike to a public road, while it may possibly become a railroad bed in the future.

Injunction refused, demurrer sustained and bill dismissed.

The plaintiff company then took this writ, assigning for error the refusal of the injunction, the sustaining of the demurrer and the dismissal of plaintiff's bill.

*Mr. Thomas Hart, Jr.*, and *Mr. Geo. R. Kaercher* (with them *Mr. R. L. Ashhurst*), for the appellant:

1. The purchase of the turnpike road and the location of the railroad thereon confine the company to the route adopted: Commonwealth v. Railroad Co., 27 Pa. 339; Wood's Railway Law, § 238, pages 752, 753 notes. This right to build the railroad upon the said turnpike road is a part of the plaintiff's franchise, and compliance with it is not only a privilege but an obligation: 2 Rorer, Railroads, 931; Blakemore v. Glamorganshire Canal Nav., 1 Myl. & K. 162; Queen v. Railway Co., 10 Ad. & E. 531; 1 Morawetz, Corp., § 419; People v. Railroad Co., 24 N. Y. 261; 2 Morawetz, Corp., §§ 1126–1128; Farmer's Loan & T. Co. v. Henning, 17 Amer. L. R., N. S., 266.

2. The right of a railroad company to its right of way is necessarily exclusive: P. & R. R. Co. v. Hummel, 44 Pa. 378. And the plaintiff has not lost its right to occupy the part of the turnpike road purchased, because of not actually building its railroad thereupon: Hestonville P. R. Co. v. Philadelphia, 89 Pa. 210; Pierce on Railroads, 260; Mills on Eminent Domain, § 320; Barlow v. Railroad Co., 29 Ia. 276; Mill v. Railroad Co., 32 Ia. 66. No one can allege forfeiture by reason of such failure except the state: 3 Wood's Railway Law, 1709, 1711; Irvine v. Lumbermen's Bank, 2 W. & S. 190; Commonwealth v. Canal Co., 21 Pa. 117; E. & N. E. R. Co. v.

Casey, 26 Pa. 297; McCully v. Railroad Co., 32 Pa. 25; Hanover etc. R. Co. v. Haldeman, 82 Pa. 45.

3. It is not contended that the plaintiff's railroad may not be taken from it by the state, under the power of eminent domain. The position of the plaintiff is, however, that this cannot be done unless the intention of the legislature that its property should be taken has been manifested in express terms or by necessary implication, leaving no doubt or uncertainty respecting the intent: Mills on Eminent Domain, § 46. There is no such intention expressed in the act of 1887. In Towanda Bridge Co., 91 Pa. 216, the proceedings were under an act expressly authorizing a toll bridge to be taken and made a free bridge. The act of 1887 is a general act, and was not intended to apply to a case in which a turnpike road has been sold and conveyed under legislative authority to a railroad company as a part of its right of way.

4. The effect of a proceeding under this act is to appropriate the right of way of the plaintiff to the purposes of a public road, for it is certain that the right of the public and that of the plaintiff cannot co-exist. This may not be done under such a general law: N. J. S. R. Co. v. Long Br. Com., 39 N. J. (L.) 28; Milwaukie etc. R. Co. v. Faribault, 23 Minn. 167; Barber v. Andover, 8 N. H. 398; Armington v. Township, 15 Vt. 745; Bridgeport v. Railroad Co., 36 Conn. 255; Central Horse R. Co. v. Railroad Co., 81 Ill. 523.

*Mr. J. Howard Gendell* (with him *Mr. Thos. Wagner, Jr.*), for the appellees:

If we do not seek to enforce a forfeiture, but simply to inquire what rights the appellant has under its charter, the act of June 19, 1871, P. L. 1361, makes it the duty of the court " to examine, inquire and ascertain whether such corporation does in fact possess the right or franchise," etc. A fortiori, this should be done when the company seeks to prevent the opening of a public thoroughfare by reason of an alleged franchise which does not exist in fact.

1. If the true construction of the act of 1887 requires the condemnation of the railroad franchise, together with the right to collect tolls, there is nothing to prohibit such condemnation: Branson v. Philadelphia, 47 Pa. 329; Commonwealth v. Penn.

Canal Co., 66 Pa. 41; Towanda Bridge Co., 91 Pa. 216; Twenty Second Street, 102 Pa. 108; Phil. etc. R. Co.'s App., 102 Pa. 123; Plan of Kensington, 2 R. 445.

2. But the truth is, that the two rights are distinct. The freeing of the existing turnpike from the tolls now being collected on it, still leaves it subject, in common with the other highways mentioned in the plaintiff's charter, to the right to construct a railroad there. When authority was granted the plaintiff by the act of 1872, to use the macadamized part of the road, did this vacate the highway not already vacated? Our claim is, that the appellant has rights over a number of public highways, to construct a railroad thereon. On this specific street, a public highway as far back as 1813, the company has the additional and separate franchise of collecting tolls. The taking of this latter franchise does not affect the other.

OPINION, MR. JUSTICE PAXSON:

This bill was filed in the court below to restrain proceedings under the act of 2d June, 1887, P. L. 306, to condemn a section of the Frankford & Oxford Turnpike Road. The only object and effect of such proceedings was to free the road from tolls, and open it to public travel, as in the case of other country roads. In May, 1872, the appellant company purchased the portion of the turnpike referred to for the purpose of using it as a right of way upon which to lay its tracks in approaching the city of Philadelphia. No track has ever been laid, but by virtue of an amendment to its charter, passed in 1873, the railroad company has continued the use of the road as a turnpike, and has been collecting tolls thereon. The court below refused to grant the preliminary injunction, and subsequently, the defendants having filed a demurrer, sustained the demurrer, and dismissed the bill.

The plaintiffs contend that the act of 1887 does not apply to this case; that it was never in the contemplation of the framers of that act that under it the right of way of a railroad company should be condemned and taken for public use ; they say the piece of turnpike road in question is the only route by which they can complete their road to its contemplated terminus within the city, without an expense which will be so great as practically to exclude them altogether, and, that, as before

stated, they acquired this particular property for that sole purpose.

The answer to this is that they hold this portion of the road in a dual character: first, as a railroad company for the purpose of laying down its tracks thereon ; and second, as a turnpike company for the purpose of collecting tolls. It is only as to the use last stated that these proceedings are directed. The petitioners are not seeking to interfere with the right of the company to extend its track over the road, nor could such a proceeding be entertained under the act of 1887. We think the appellants are needlessly alarmed at the effect of the action of the petitioners. It can result only in making it a free road until such time as the appellants are ready to lay down their tracks, when, if they show a legal right to so appropriate the road, it is difficult to see how this proceeding can affect them. It concerns them only in their capacity of turnpike owners, and it has been repeatedly held that turnpikes, that is to say, the right to collect tolls, may be taken for public use upon compensation being made. This is all there is in this case, and we think the court below did not err in sustaining the demurrer and dismissing the bill.

> The decree is affirmed, and the appeal dismissed at the costs of the appellants.