# Ridge Avenue Passenger Railway Company, Appellant, *v.* The City of Philadelphia.

*Arbitration—Conclusiveness of referee's findings of fact.*

A finding of fact by a referee is as conclusive upon a court of error as the verdict of a jury.

*Street railways—Municipalities—Change of grade—Damages.*

A street railway company which occupies a street, subject to the right of a city to change the grade, cannot recover damages from the city for inconvenience, detention of cars and loss of business caused by changing the grade, where there has been no intentional delay or neglect in the prosecution of the work; although the damages may be consequent upon a mistake of judgment by the city in the manner of making the change.

*Street railways—Turnpike companies—Municipalities.*

A city has the right to establish or change the grade of a street which had once been the bed of a turnpike, without regard to the contracts of the turnpike company with a street railway company antedating the lawful acquisition of the street by the city.

A street railway company was given authority by the legislature to lay its tracks upon a turnpike with the consent of the turnpike company. The railway tracks were to conform to the established grade, or the grades thereafter to be established. The railway company stipulated in an agreement with the turnpike company that if the city should at any time purchase the turnpike, the turnpike company would provide in some manner that there should be no interference with the grade of the railway company, and no alteration of the same without the consent of the railway company. The city subsequently acquired the turnpike, and changed its grade. In making the change of grade the railway company was delayed

and injured in its business.  *Held,* that the city was not liable to the railway company for its loss.

*Street railways—Municipalities—Change of grade—Confirmation of plan.*

A street railway company occupied a street subject to the right of the city to change the grade.  The city entered into various contracts for grading the street, each purporting to be authorized by a resolution of councils, the grading to be done in accordance with an established city grade.  The street railway company sued the city for injuries resulting from delay in business during the course of the grading.  The case was referred to a referee who found in favor of the city.  It was alleged that the change of grade was unlawful because of failure to have confirmed a revised plan of the grade.  This point was made before the referee, but he made no specific finding upon it, and the evidence to support it was not pointed out to the Supreme Court.  *Held,* that in the absence of full proof, after trial on the merits, the Supreme Court will not assume that the irregularity, if it existed, was of such gravity as to render the city a trespasser in improving its own streets.

Argued Jan. 19, 1897.  Appeal, No. 222, Jan. T. 1896, by plaintiff, from judgment of C. P. No. 3, Phila. Co., March T., 1875, No. 353, on verdict for defendant on trial by referee.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Case to recover damages for injuries to plaintiff's business.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in overruling exceptions to report of referee.

*J. Howard Gendell,* with him him *John G. Johnson,* for appellant.—In order to relieve a city from responsibility for the act of its contractor the work must be lawful: Painter v. Pittsburg, 46 Pa. 213 ; Rose v. Phila., 31 Leg. Int. 165.

The referee finds that no grade line had ever been established in accordance with the provisions governing the city of Philadelphia; it therefore seems to follow that the work done was altogether illegal, and no contract with a third person will relieve the city from responsibility and liability for an illegal and improper obstruction of the highway.

If a stranger or trespasser, without color of authority, dig a trench or otherwise interfere with the good condition of the street, the city is not liable for the original creation of this

nuisance, for it had no part in it; but it is liable if it permit it to continue : Boyle v. Hazleton Borough, 171 Pa. 167 ; West Chester v. Apple, 35 Pa. 284 ; Elliott on Roads and Streets, 458.

*E. Spencer Miller*, assistant city solicitor, with him *John L. Kinsey*, city solicitor, and *James Alcorn*, assistant city solicitor, for appellee.—We submit that a passenger railway company is not privileged above the rest of the traveling public in respect of the highway used. It would not be difficult to instance other forms of vehicles which are practically limited for their ordinary occupation to a single highway. In many quarters access cannot be had by any vehicles, save through the use of some particular street. Unless the court is prepared to discriminate as to the peculiar temporary circumstances of the vehicle which may be in question, no exceptional privilege can be accorded the plaintiff : Gold v. Phila., 115 Pa. 184 ; Megargee v. Phila., 153 Pa. 340.

OPINION BY MR. JUSTICE DEAN, July 15, 1897 :

This is a suit for damages against defendant for illegally permitting obstruction to travel on Ridge avenue, a street of the city, for several years prior to March 30, 1875. Under act of assembly of March 30, 1811, the Ridge Avenue Turnpike Company was incorporated, with right to construct a road from the intersection of Vine and Tenth street to Perkiomen bridge in Montgomery county. This was done, and in, and for a considerable distance out of the city limits was known as the "Ridge Road." By the terms of the charter, the road was to be macadamized and constructed not less than forty nor more than sixty feet wide, with a good and sufficient summer road at the side thereof where practicable, and the company was thereafter forever to maintain it in perfect order and repair. By the Consolidation Act of 1854, the boundaries of the city were extended to include within its limits all of the road up to the Montgomery county line, and on the city plan the turnpike was adopted as a city street by the name of "Ridge avenue." By act of April 15, 1858, the Girard College Passenger Railway Company was authorized to construct a railway down Ridge avenue from the college to Tenth and Ninth streets. By act of March 28, 1859, the Ridge Avenue and Manayunk Passenger Railway

Company was authorized to construct a railway from the college, by the Ridge avenue and Manayunk turnpikes, to Manayunk and Roxborough, within the city limits, with the proviso that the passenger railway company, before commencing construction, should purchase the right of way from the turnpike companies. It was further provided in the act that the passenger railway company, in construction, should conform to the grades of the streets now established or hereafter to be established, and at their own expense perpetually keep the streets in good repair. Acting under the supposed authority of the act of March 8, 1872, the two passenger railways were consolidated under the name of the Ridge Avenue Passenger Railway Company. While this act was afterwards, in City v. Railway Co., 142 Pa. 484, declared unconstitutional, nevertheless, without it, the consolidation was lawful under previous legislation. When the Ridge Avenue and Manayunk Company constructed their railway they located it, not upon the middle or macadamized part of the turnpike, but upon the summer road at the side; and in obedience to the injunctions of the act under which the company was incorporated, it purchased from the turnpike company the right of way, for the sum of fifteen thousand dollars; and by another agreement of same date it was stipulated that if the city should at any time purchase the turnpike, the turnpike company would provide in some manner that there should be no interference with the grade of the railway company, and no alteration of the same without the consent of the railway company, and further, that the railway company should not have imposed upon it the obligation of keeping the street in repair. Subsequently to this agreement, the city, at different times, but before 1870, by proceedings in the quarter sessions, acquired the whole of the turnpike within the city limits. By resolution of councils, March 26, 1870, the city decided to grade Ridge avenue from Columbia avenue to Dauphin street, and contracts were entered into on July 13th and 18th following with Patrick McEntee to do the work according to the specifications of an ordinance theretofore passed, and to complete the work within six months after notice to begin from the chief commissioner of highways; if not so completed, the commissioner was authorized to annul the contract at three days' notice; but no work was to be done between the first days of December and April.

The work was not completed by McEntee, and from May, 1872, to October, 1873, five other contracts were made with other contractors for parts of the work, some of it between Columbia avenue and Dauphin streets, covered by the McEntee contract, and other parts extending the entire length of the avenue, about four miles, to Wissahickon creek. Some of the contracts were for paving the sidewalks; others for grading the bed of the street, and the work, from date of commencement to finish, covered a period of four years. During this time the plaintiff's business as a carrier of passengers was seriously interrupted, not only by the workmen of the city contractors in passing and repassing with carts across the roadbed, but also by the frequent temporary changes of rails to facilitate excavation, and the obstruction of public travel by vehicles on the roadway. It made complaint several times to the city authorities of undue delay by the contractors, and unnecessary impediments to travel on the railway. For the damages thus occasioned this suit was brought against the city, which denied any liability to plaintiff. In the suit as originally brought the contractors were joined as defendants, but after pending four years, their names were stricken off, leaving the city the sole defendant. By agreement of the parties, on March 16, 1880, Samuel C. Perkins, Esq., was appointed referee, under act of May 14, 1874, to hear the evidence, find the facts and report his conclusions of law. He had many meetings, and on May 25, 1895, fifteen years after his appointment, filed his report, in which he determines the city is not answerable for the damages sustained by plaintiff. Exceptions filed to the report were dismissed by the court below and judgment entered for defendant. From that, plaintiff appeals, preferring twenty-two assignments of error, which may be grouped into two classes, those complaining of error in findings of facts, and those of error as to conclusions of law.

1. The referee does find plaintiff was inconvenienced by the detention of its cars; was obliged to run fewer cars; its rolling stock and horses were injured; the passenger traffic and receipts fell off; and, that plaintiff suffered serious damage but,

2. He finds, " There was not, in the course of the performance of the work under the contracts, any wilful, malicious and intentional delay in the construction of the work or obstruction in the operation of the railway, or in the traffic and travel thereover."

3. He finds, that the damage resulting to plaintiff was consequent upon the change of grade.

Putting aside the question as to the extent of the city's answerability for the conduct of independent contractors, and assuming for the present that it must respond in damages for them, nevertheless, it seems to us, under the evidence, as well as under the referee's finding of fact, the plaintiff cannot recover. There was some evidence tending to show unnecessary delay in the work, but, on the other side, the weight of it tended to show nothing more, in the most unfavorable view, than an error of judgment. It is indisputable that the grade adopted by the city could not, from its very nature, have been constructed on the ground, without more or less interruption to travel on the street, both by vehicle and railway. The length of street affected by the change was four miles; to have put at work a sufficient force of men, animals and machinery to accomplish the change in the shortest possible time, would for that time have stopped all travel for the whole length of the avenue. To avoid this total interruption for this distance, the city authorities contracted for the work by nine contracts, in sections. In 1870, the work between Columbia avenue and Dauphin street was contracted for; in 1872, the paving from Dauphin to Huntingdon streets; in January, 1873, the grading of the avenue between the same points; in April, 1873, the paving between Allegheny avenue and Wissahickon creek; in June, 1873, the grading of the street between same points; and so down to October 25, 1873, the date of the last contract. While by this method there was partial obstruction all these years at one or more points, there was not a total stoppage of the travel the whole distance at any one time. As testified by Mr. Jones, president of the railway company, "The whole road from end to end was not impassable, but just such sections as were being worked upon." It is not demonstrated to a certainty, by the event, that the method adopted was not the best. When the improvement was determined on the problem presented was, is it better to absolutely exclude the public from the avenue, including the passenger railway, for one year, and put sufficient force on to complete the work in that time? Or, should it be done in sections, one piece at a time, leaving the avenue open its whole length, but the public more or less in-

convenienced at some point for four years? That is, by way of illustration, two thousand men could have graded the four miles in one year, if public travel had been wholly stopped; five hundred men could do the work in four years, with travel only seriously inconvenienced. The city adopted the second method; that may have been a mistake, but if it were, which is doubtful, the city is not answerable for a mere mistake of judgment. In conducting the work, the city kept policemen on the ground to direct the public and facilitate travel as much as possible; but necessarily the interruption and delays to both travelers and contractors, by traveling and working on the same street, were annoying, and sometimes exasperating to both; but that was a consequence of the method adopted, and not of negligence. In view of all the evidence, the referee was warranted in finding there was no intentional delay or neglect in the prosecution of the work under the method adopted. And the finding of fact by the referee is as conclusive upon a court of error as the verdict of a jury: City v. Linnard, 97 Pa. 242.

Taking the facts to be as found by the referee, are his conclusions of law sustained? The railway company was only an artificial person using the street in common with natural persons. Whatever rights it may possess in the use of the street, by reason of its construction and purpose, distinct from those of the general public, it has no peculiar or special exemption from the interruption and damage necessarily resulting from municipal improvements. It occupied the highway by grant from the commonwealth, with the written consent of the turnpike company. This very grant, instead of exempting, specially enjoined conformity to the grade of the street now established, or hereafter to be by law established. Afterwards, the turnpike, by proper proceedings, became a city street; the city did not take it subject to indefinite liens or contracts made by the turnpike company in favor of other corporations; it took the subject, the incorporeal hereditament; if thereby any injury resulted to the railway company it must seek reimbursement from the damages paid for the taking, or must have recourse to the contracting party on its covenant. The municipality, under its right, has taken all there was in the turnpike company to take. The very purpose of the taking, and the reason for granting the authority to take the turnpike, is, that for the good of the general public,

it may be subjected to full municipal control under the municipal laws. What would be the right of plaintiff in its present location if the street were vacated by the city it is not necessary to inquire, for the question is not before us; but the authority of the city to establish or change the grade of its street which once had been the bed of a turnpike, without regard to the contracts of the company with third parties antedating the lawful acquisition by the city of the street, is undoubted. The plaintiff, when it made its contract with the turnpike company, knew the city might by law take possession of the roadbed and adopt it as one of its streets; and that then the city might change or alter the grade, and that the railway company, as one of the public, must submit, without compensation, to the inconvenience and damage from interruption of travel incident to the improvement, it also knew.

It is alleged further the change of grade was unlawful because of failure to have confirmed a revised plan of the grade. While this point seems to have been made before the referee, he barely mentions it in his report, without a specific finding; neither appellant nor appellee has pointed out to us the evidence on which the one avers and the other denies it. The referee does find, however, that the contracts for grading Ridge avenue from Columbia avenue to Dauphin street were, by authority of resolution of councils of March 26, 1870, to accord with the established grade, and that the work should be done as specified in accordance with ordinance approved March 27, 1868; and so, in every contract for grading, each purports to be authorized by a resolution of councils, the grading to be done in accordance with an established city grade. We will not now assume, in absence of full proof, after a trial on the merits, that this irregularity, if it exists, is of such gravity as to render defendant a trespasser in improving its own streets.

We are clear the city had authority to grade and improve this street. In doing this, it had the right to adopt such method of allotting and carrying on the work as to it seemed best. For the damage resulting to the public because of the necessary interruption to travel during the progress of the work, under the plans adopted, it is not answerable to one of the public, unless the complainant shows a damage different in kind and peculiar to himself. The damage here shown by

plaintiff, though probably greater in amount than that sus-
tained by any other person, is of the same kind as suffered by
the general public using the street. ·

All assignments of error are overruled, and the judgment is
affirmed.