## Alexander S. Maltman v. Chicago, Milwaukee & St. Paul R. R. Co.

1.   ESTOPPEL—*Of Railroad to Deny that Land Used by Permission of a City is a Public Street.*—Where a railroad company has applied for and obtained leave to lay its tracks upon a given strip of land, as a street of a municipality, by application to the municipality within the boundaries of which the said strip lies, and has laid its tracks pursuant to the permission of such municipality granted upon such application, it can not be permitted afterward, and while it continues to maintain such possession by reason of such permission, and without other title, to deny that the said strip was, at the time its possession was taken, a street or part thereof, in an action by an abutting property owner to recover damages for injuries claimed to result from laying such track in such street.

2.   ROADS—*When Proof of Existence of, Necessary in Suit for Injury to Property by Obstruction of.*—If a plaintiff alleges in his declaration that he owns property abutting on a road, that such road affords access to and egress from his property, and that the defendant has taken possession of said road or part thereof, and thereby damaged such property, he makes the existence of the road material and should prove it in order to entitle him to a recovery.

Trespass, for injuries to real estate. Appeal from the Superior Court of Cook County; the Hon. Nathaniel C. Sears, Judge, presiding. Heard in this court at the October term, 1897. Reversed and remanded. Opinion filed December 16, 1897.

Wilson, Moore & McIlvaine, attorneys for appellant.

Charles B. Keeler & E. Parmalee Prentice, attorneys for appellee; Geo. R. Peck, of counsel.

Mr. Justice Windes delivered the opinion of the Court.

Appellant brought this action to recover from appellee damages which he claims to have sustained as owner of six-teen lots fronting on what is known as Bloomingdale road, upon which road appellee has built and is operating its railroad. This suit has been tried twice. On the first trial the case was taken from the jury by the court, and judg-ment rendered for appellee, which judgment was reversed for the reason that the record disclosed a conflict of evi-dence on alleged matters of fact which should have been submitted to the jury. 41 Ill. App. 229. On the second trial, a jury having been waived, the court found the issues for appellee and rendered judgment in its favor, from which this appeal is prosecuted.

The record and abstracts are voluminous and the briefs of counsel exhaustive in the discussion of the questions pre-sented, but after a careful consideration of the same we think it necessary to enter into a review of but one question of law presented. In the year 1857 the locality where the lots are situated was a rural community, a part of the town of West Chicago, outside the limits of the city of Chicago, but sparsely settled, although a subdivision of the lots in question, with other property, had been made and recorded in 1854, known as Pierce's addition to Holstein. The west line of this subdivision is the west line of section 31, town-ship 40 north, range 14, and the south line of the subdivision is the north line of the south $\frac{1}{2}$ of the southwest $\frac{1}{4}$ of the same section. The subdivision shows lots, blocks, avenues, streets and alleys, and, among others, Bloomingdale road, of

the width of thirty-three feet, extending east from Western
avenue past Rosebud avenue, to Milwaukee avenue, a dis-
tance of nearly one quarter of a mile.   The appearance of
Bloomingdale road on the plat would indicate it was the
intention of the maker to dedicate thirty-three feet for the
purpose of a street, the other half of which should be made
up from lands to the south of the quarter section line, which
would be in the center of the road.

At this time, 1857, Milwaukee avenue was a toll-road and
thoroughfare of travel for the public; Western avenue was
also a  public  street, but not  traveled  a  great deal, and
Bloomingdale road was used  somewhat by the public, but
a fence of posts and boards extended along the quarter sec-
tion line from Western avenue to Milwaukee avenue, and
thence in a southeasterly direction along the southerly line
of this avenue, and with other fences inclosed a tract of
some twenty-three acres, the legal title of which was in a
trustee for the use of Mrs. Emeline Castle, the wife of
Edward H. Castle.    Mrs. Castle and her  husband then
resided at what was known as the Bull's Head Tavern, within
this inclosure on Milwaukee avenue, near its intersection
with Bloomingdale road.    The title to this twenty-three
acres passed in 1862, to one Isham, in whom it remained
until his death in 1865, when it passed to his heirs, in whom
it remained until after the commencement of this suit, sub-
ject to the public right as hereinafter stated. . Isham and
his heirs all resided in New York City, but had agents in
Chicago who looked after this property for them, and
rented it from time to time.

During the year 1857, August Steinhaus, who was then
one of the highway commissioners of the town of West
Chicago, was employed and paid by the town to ditch and
grade certain streets of the town, among others said Bloom-
ingdale road.    He ditched and graded this road during the
year 1857.    While engaged at this work, Steinhaus—with
the consent of said Edward H. Castle, whom Mrs. Castle
testified always attended to her business affairs and had
charge of what was done upon her property, and that mat-

ters as to what should be done with the land were generally
left to him—moved said fence from the quarter section line
to a point which the preponderance of the evidence shows
was about thirty feet south from the quarter section line.
Mrs. Castle also says she never gave her consent to the
moving of this fence, and says she didn't know that it had
been moved.

No other improvement of this road appears to have been
made after 1857 and up to the year 1886, when the second
railroad track was laid, as hereinafter stated, but it was
used continuously as a highway, as graded by Steinhaus,
from the year 1857 up to 1886, except that the travel was
somewhat obstructed by the building of the first railroad
track about the year 1872, as hereinafter stated.

The fence, as located by Steinhaus when he moved it in
1857, remained in that position from the east line of West-
ern avenue to the westerly line of Milwaukee avenue, until
the year 1890, when it was located definitely, by the survey
of the witness Martin Draths, at about thirty feet south of
the quarter section line.    There is quite a conflict in the
evidence as to the location of this fence at different times
from the year 1857 down to 1886, but from a careful exam-
ination of all the evidence, we think its clear preponderance
establishes the conclusion above stated.

In 1863 the city limits of Chicago were extended to
Western avenue, and in 1872 the city passed an ordinance
by which the appellee, through its lessor, the Chicago &
Pacific R. R. Co., was allowed to construct and maintain a
railroad with single and double tracks, commencing at the
Western city limits at Bloomingdale road (or street',
thence on said Bloomingdale road to and across Coventry
street, more than one mile to the east of Western avenue.
Pursuant to this ordinance, appellee's lessor, as a part of its
railroad, built a track in 1872 along said Bloomingdale road,
east from Western avenue to and across Milwaukee avenue,
opposite the said lots, within the thirty-three feet shown
as Bloomingdale road on the plat of said Pierce's addition,
and very near the quarter section line.    This track was

used for railroad purposes from that time up to 1886, when it was moved slightly north, at some points between Western avenue and Milwaukee avenue, and at other points between said avenues slightly south, and a second track was laid by appellee, all being done pursuant to the same ordinance, and under a special permit for that purpose granted by the commissioner of public works of the city of Chicago, on the application of appellee's lessor and for appellee's use and benefit. The application made to the commissioner of public works requests a permit to lay down and operate a double track from the Western limits of the city on Bloomingdale road to and across Coventry street, " as shown on accompanying tracing." The tracing shows double tracks along Bloomingdale road between Western and Milwaukee avenues, the quarter section line being about midway between the north and south rails of the respective tracks, but it fails to show any southern boundary for the road.

The permit issued on the application is to lay down and operate an additional track " on and along Bloomingdale road from the western limits of the city of Chicago to and across Coventry street," and states that " This permit is granted upon the express condition that the present track is to be thrown over the necessary distance and the proposed track shall be laid alongside of present track, so that the double track, when completed, shall occupy as nearly as practicable the centre of said Bloomingdale road as shown in red lines on plat on file in this office, and further, that said railroad company shall lay down and maintain said tracks in a manner satisfactory to the commissioner of public works;" also, that " All work and material connected with the laying of said tracks must be in strict conformity with the ordinances of the city council concerning the same, and to the satisfaction of said commissioner."

The first track was shifted as indicated in said tracing, and the second track laid in 1886, under the supervision and direction of an inspector appointed by the board of public works of the city, and the north rail thereof placed about four feet south of said quarter section line.

Ever since this work was done, the double tracks laid as above have been used by appellee for railroad purposes, to the great damage, as the evidence tends to show, of appellant's property.

Appellant acquired title to said sixteen lots in March, 1874, and in 1879 to 1881, erected thereon nineteen two-story brick buildings for renting purposes. At the time appellant acquired title to said lots and when he built his houses thereon, said first track was used for railroad purposes, but no claim is made in this case for damages because of the original construction of said first track and its use up to 1886. In 1886 the assessor for the West Division of the city of Chicago made a subdivision of unsubdivided lands in the south ½ of the southwest ¼ of said section 31, in which said twenty-three acres is shown as lot 1, the north line of which extends to said quarter section line above mentioned. From 1866 to 1886 the Isham heirs paid taxes on said twenty-three acres and leased the same under the description of said lot 1, and claim that they never knew that the strip in question was at any time used as a street, and that they never consented to such use.

The principal point of contention of fact is as to the actual width of Bloomingdale road as used by the public from 1857 to 1886, which is conceded to have been a street or highway for travel from the south frontage of the lots in question, in the year 1872, to the quarter section line, or a width of about thirty-three feet, and so remained from 1872 to 1886, except as it may have been obstructed by the construction and use of said first track. In connection with this question of fact arise also questions of law as to whether, under the evidence, there was a dedication south of the quarter section line, and if not a dedication, whether there was a highway established by prescription or under the statute by twenty years user by the public. And further, that if it should be held that said road was not in fact a public highway south of the quarter section line, still appellant claims that appellee can not now be heard to say that it was not a public street, because of its action above

set forth, in applying for said permit, acting by virtue thereof, and constructing its tracks under the supervision of the city.

As to the first point of contention, in the opinion of the learned trial judge, which is made a part of appellee's brief, appears the following as to the question of user for twenty years, viz. :

" I have examined the testimony of all the witnesses upon that point, and I am inclined to think that the contention of plaintiff that there is a preponderance of testimony on the question of moving the fence is good. At the same time, the preponderance upon the proposition of the width of the street, and also upon the use of the roadway on either side, between 1857 and 1872, the time of the laying of the first track, is against the plaintiff, and the question arose, and I admit that I was in some doubt about it for a time, as to what the court ought to do, finding the preponderance for the plaintiff on the question of moving the fence, and finding a clear preponderance against him on the proposition of the width and use of the roadway."

This language clearly indicates, when considered in connection with the evidence, that the trial court was of opinion that the contention of appellant that the fence was not moved after it was moved by Steinhaus in 1857, is established by a preponderance of the evidence. This being the opinion of the trial court, then the point to determine was, where was the line of this fence. It is conceded that this fence was originally on the quarter section line, and it is clearly shown that the first track was laid north of it, but at no point more than four feet north of the quarter section line; that south of this track there was a ditch; that wagons were driven, from time to time, between the ditch and the first track; that there was a pathway between the ditch and fence, and the location of the fence in 1890, is fixed by actual survey. When it is considered that the established rule is that courses and distances must yield to monuments, when proved, it seems clear that the opinion of the trial court as to the fence not having been moved, fixes it where the sur-

veyor located it, at about thirty feet south of the quarter section line, and this view is strongly corroborated by the clear weight of the evidence, and should overcome the testimony of appellee's witnesses, whose testimony as to their memory of the width of the road seems to have been of controlling influence with the trial court.   It is not necessary, however, to, and we do not, place this decision on the question of difference of opinion between this court and the learned trial judge on a controverted question of fact which he must have found against appellant, because he failed to give the proper weight to so significant a point of the evidence as the location of the fence, which he says was in appellant's favor.   The questions of law arising in connection with this controverted fact are not important in the view of the case taken by this court, and will not be discussed, since they can not arise on another trial, if we are correct as to the other question of law.

Let it be assumed the land on which appellee's second track was laid, was in fact private property, as appellee contends; can it, under the facts in this record, now be allowed to say it was not a street?   Appellee, at the time this suit was brought, August 2, 1888, claimed the right to occupy by its tracks the strip in question south of the quarter section line under an ordinance of and by a permit, pursuant to its application therefor, from the city of Chicago.   It had no other right to occupy this strip.   When appellee made its application to the city for a permit, it asked for a permit to construct and operate a double track "from the western limits of the city on Bloomingdale road to and across Coventry street," and with the application presented a tracing or map on which said road is shown, though the southern limits of the road are not shown.   The permit was granted as requested, but upon condition that the first track should be " thrown over the necessary distance and proposed track laid alongside of present track so that the double track, when completed, shall occupy as nearly as practicable, the center of said Bloomingdale road."   This permit was complied with strictly by appellee,

and under the supervision and direction of the city, and the
tracks as constructed were used by appellee for railroad
purposes up to the commencement of this suit. Appellee
now says this strip was not a part of the street, but private
property, and therefore there is no liability on its part for
damages to appellant.

In the case of Chicago, S. F. & C. Railway Co. v. Ash-
ling, 160 Ill. 379, which was an action of debt by appellee,
as administratrix of Edward Ashling, deceased, against the
Santa Fe Ry. Co., based on a judgment previously recov-
ered for negligence of the Chicago & St. Louis Ry. Co.,
causing the death of said deceased, on the ground that the
former company had, pending the original suit, become
consolidated with the latter under the statute of this State,
and the latter company was therefore liable for the judg-
ment.     The Santa Fe company denied the consolidation.
The Supreme Court said: " This is not a direct proceeding
to test the right of the Santa Fe company to hold the
franchises and property of the St. Louis company, and to
assert its corporate rights and franchises, and if the effect
of what has transpired between the two companies amounts
to a consolidation of the St. Louis company with the Santa
Fe company, the latter can not, in this proceeding, be heard
to say that it did not comply with the requirements of the
statute, but it is estopped therefrom."

Hughes v. Carne, 135 Ill. 527, was a suit for partition by
Hughes, the grantee of one Becker, in which, besides the
partition, it was sought to set aside a tax deed to Carne, of
a portion of the premises in controversy, as being invalid.
It appeared that in the affidavit of Carne, and the affi-
davits accompanying it, and made a part thereof, which he
presented to the county clerk when he applied for the tax
deed, he mentioned said Becker as owner.    He was required
by law to serve a notice on the owner, and notify such
owner by publication before he would be entitled to a tax
deed.    He published a notice addressed to said Becker as
owner.    On the trial Carne contended that Hughes had not
been shown to be the owner, though it was shown she was

the grantee of Becker.  The court said : " Carne is estopped
from denying that Becker was the owner at that time"
(referring to the time he made his affidavit and published
the notice).  " The applicant for a tax deed can not swear
to the ownership of a party in order to get his deed, and then
deny his own sworn statement when the deed is attacked."

Doane v. Lake Street El. R. R. Co., 165 Ill. 524, was a
suit in which an abutting property owner asked an injunc-
tion against the railroad company to prevent it from build-
ing its road in the street in front of his property, on the
claim that the ordinance under which the road was being
constructed was illegal and void, because of non-compliance
with certain requisites of the statute preliminary to an appli-
cation to the city council by the railroad company, and to
the passage of the ordinance.  The relief asked was denied,
for, among other reasons, that the owner had an adequate
remedy by suit for damages.  It was contended that if the
railroad was unlawfully in the street it was a public nuisance,
subject to be abated and removed at any time, and there-
fore that the owner could only recover damages to time of
bringing his suit, and hence there would be a multiplicity
of suits in order to make the remedy complete.

The court said: " We think it clear the defendant, if
sued for resulting injury, could not be heard to say its road
was a nuisance, or built in violation of law.  Having accepted
and availed itself of the grant of authority from the city
to occupy the street, it would be estopped to question the
validity of that authority.  For the purposes of recovery
against it of damages, whether present or prospective, its
road must be deemed lawfully in the street, and it compelled
to fully compensate all parties injured on that theory.  This
proposition seems to us so reasonable that authorities need
scarcely be cited in its support."

The principle announced in the foregoing cases is not that
of an estoppel *in pais* or equitable estoppel, as is contended
by appellee.  It is unnecessary, in the application of this
principle, that the party seeking its application should show
that he had taken action relying on the representations or

acts of the opposite party, but the courts say it is enough to debar a party from being heard, if he alleges his past action was wrongful, or that his representation was untrue, when it is sought to enforce a liability based on that past action or representation.

In the Doane case, it does not appear that the property owner was caused to take any different position or do anything to his injury because of the acts of the railroad company. In the Carne case, neither Hughes nor her grantor, Becker, was placed in any different position because Carne had sworn Becker was the owner of the land in controversy, and gave notice to him as such owner.

So in the Ashling case, neither the administratrix nor her decedent, for whom she sued, had anything whatever to do with the action of the railway companies with reference to consolidation, directly or indirectly, nor was either of them caused to do or omit to do anything by reason thereof.

The following cases support the principle announced in the cases, *supra:* City of Chicago v. Wheeler, 25 Ill. 478; Higgins v. City of Chicago, 18 Ill. 276; People v. Maxon, 139 Ill. 306; Union Mutual Life Insurance Co. v. Slee, 123 Ill. 57; Thatcher v. People, 98 Ill. 632; Pool v. Breese, 114 Ill. 594; Purcell v. Town of Bear Creek, 138 Ill. 524.

We think the contention of appellee's counsel that the map presented to the city and made by the engineer of the railroad company shows Bloomingdale road a thirty-three foot street, is not tenable. On the contrary, this plat fails to fix any southern boundary to this road. The application accompanying the map asked for a double track on the road as shown on the tracing, and it shows two tracks on the road, one north and the other south of the quarter section line, about equi-distant therefrom. The permit was to construct an additional track on Bloomingdale road, on condition that when completed, the two tracks should " occupy as nearly as practicable the centre of said Bloomingdale road."

This clearly amounted to a statement by the company that Bloomingdale road at this point was a public street

north as well as south of the quarter section line, and the city so considered it, or it would not have granted the permit with the conditions imposed by it.    The company, by acting under the permit in building its tracks, as it did in the space north of the south fence and south of the quarter section line, under the supervision of the city, and without any other right to occupy this space, said, in effect, it laid its tracks on a public street, the middle of which was the quarter section line.    It follows from the above that the trial court erred in not holding appellant's first proposition of law, which was based on these facts and the principle of law above stated.

It seems unnecessary to discuss appellant's claim to recover under his third count, whether the strip in question be held a street or not, but would say we are of opinion the contention is not tenable.    Appellant, having alleged in said count that his lots abutted Bloomingdale road, that this road afforded access to and egress from his houses, and that appellee took possession of said road, whereby appellant was injured, made the existence of said road material, it being descriptive of locality, and he should have proved it, in order to entitle him to a recovery.    Wisconsin C. R. R. Co. v. Wieczorek, 151 Ill. 585; 1 Chitty's Pl. 252; Jerome v. Whitney, 7 Johns. 321; Buddington v. Shearer, 20 Pick. 477.

The judgment will be reversed and the cause remanded.

Judge SEARS took no part in the decision of this case.