# Suburban Rapid Transit Street Railway Company v. Monongahela Natural Gas Company, Appellant.

*Turnpike companies—Gas pipe under road—Natural gas companies— Condemnation of road—Estoppel—Equity—Corporations—Injunctions.*

1. Where a turnpike road company in consideration of gas to be furnished to itself, its successors or assigns, grants a "right of way" to a natural gas company "its successors and assigns for the purpose of laying pipes along said turnpike road" and the turnpike company subsequently assigns its rights under the contract to a street railway company, and thereafter the turnpike road is condemned and becomes a public street, the assignee of the turnpike company has a right to demand gas from the natural gas company as provided by the contract, as long as the natural gas company maintains its pipe line along the road undisturbed; and it is immaterial whether or not the turnpike company owned a fee in the road, or had power to grant a right of way beneath the surface.

2. The taking over of a turnpike road by a county does not *ipso facto* terminate a right of way granted by the turnpike company to a natural gas company for gas pipes along the road.

Argued Oct. 24, 1910. Appeal, No. 104, Oct. T., 1910, by defendant, from decree of C. P. No. 1, Allegheny Co., Sept. T., 1908, No. 475, on bill in equity in case of Suburban Rapid Transit Street Railway Company, Consolidated Traction Company and Pittsburg Railways Company v. Monongahela Natural Gas Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction. Before MACFARLANE, J.

The facts are stated in the 'opinion of the Supreme Court.

The court entered a decree enjoining the defendant from discontinuing the supply of gas to plaintiffs in accordance with the terms of the agreement of June 13, 1889, between defendant and Birmingham & Brownsville Macadamized Turnpike Road Company.

*Error assigned* was the decree of the court.

*J. Rodgers McCreery*, with him *W. B. Rodgers*, for appellant.—By the contract the turnpike company gave permission to the gas company to disturb its roadway by laying and maintaining pipe and telegraph lines. The turnpike company did not grant an easement or other right to the gas company: Sterling's App., 111 Pa. 35.

The county took the road free of contracts made by the turnpike company: Ridge Ave. Pass. Ry. Co. v. Phila., 181 Pa. 592.

*David A. Reed*, of *Reed, Smith, Shaw & Beal*, for appellees, cited: Germantown Pass. Ry. Co. v. Citizens' Pass. Ry. Co., 151 Pa. 138.

OPINION BY MR. JUSTICE MOSCHZISKER, January 3, 1911:

In the year 1889 the Monongahela Natural Gas Company entered into an agreement with the Birmingham and Brownsville Macadamized Turnpike Road Company which was evidenced by a writing under seal duly executed by the two corporations. The contract provides: "That for and in consideration of the agreements and covenants . . . ., to be kept and performed by the . . . . Gas Company, the . . . . Turnpike Company, . . . ., hereby grants a right of way to the . . . . Gas Company, its successors and assigns for the purpose of laying pipes and maintaining a gas pipe-line . . . . along . . . . the said turnpike road, . . . . the said gas pipe shall be put down to a depth of 3½ feet. . . . The said . . . . Gas Company, for itself, its successors and assigns, . . . .

stipulates and agrees . . . ., in consideration of a right of way and the privilege of laying said gas pipe-lines on said turnpike, the said Gas Company will furnish free gas to the said . . . . Turnpike Road Company, its successors or assigns, for the purpose of illuminating said turnpike road, and will supply the toll houses where the said gas lines pass with gas for the same, free of charge, as long as said pipes remain in said road, or as long as said Gas Company has a sufficient supply of gas, for the purpose of conducting natural gas through and along the same. . . . The said Gas Company further agrees that the said Turnpike Company, its successors or assigns, shall have the privilege at any time of utilizing all or any part of said natural gas to be furnished for forty (40) burners for the purpose of fuel for running an electric power plant, and shall have the right to transfer the whole or any part of the amount of gas that would be consumed by said forty (40) lights, to any electric power, or light or power plant, or to transfer or lease the same to any electric railway company, to be used in its power hall, and that the amount of gas furnished by said Gas Company, to said Turnpike Company, shall be determined, if changed from the burners to the use of running an electric power plant or railway, by meter; . . . . And the said . . . . Gas Company, its successors or assigns, agrees that upon failure to supply gas as aforesaid so long as said . . . . Gas Company has a sufficient supply to comply with the above conditions . . . ., that the said Gas Company shall forfeit its right to the use of the right of way over the said road for the purpose of conveying natural gas, and a failure to comply with said conditions shall work an immediate forfeiture of the right of way hereby granted; and upon a breach of the within agreement, the said Turnpike Company, its successors, assigns and lessees, shall be fully compensated by said Gas Company."

Under this agreement the gas company laid a pipe line which it has maintained and operated to the present

time. In 1889 the turnpike company assigned its rights under the contract to the Suburban Rapid Transit Company. In 1902 the latter company was taken over by the Consolidated Traction Company, and for some time past that company has been operated by the Pittsburg Railways Company. The gas company has supplied the gas to these corporations consecutively, and it still has a sufficient supply of gas to enable it to fulfill its agreement under the contract. In 1900 the turnpike road was condemned under the Act of June 2, 1887, P. L. 306, and in 1901 it became a public road or street. In 1908 the defendant notified the railways company that since the turnpike had been taken over by the county it did not consider itself obligated to supply further gas under the contract, and that the gas would be shut off forthwith; whereupon the plaintiffs filed a bill against the gas company praying for an injunction to restrain it from discontinuing the supply of gas. After hearing, the court below found the facts as we have stated them, decided the case upon its merits, and issued the injunction as prayed for. No question of equity jurisdiction is raised by the assignments of error.

The appellant contends that the condemnation of the turnpike terminated the contract and relieved it from its obligation to supply gas to the assignees of the turnpike company. It argues that the grant under the contract was merely a permission to disturb the turnpike roadway in order to lay the pipe line, and that when the turnpike was condemned, the permissive right came to an end and the county took the road free of the contract. In support of this argument the appellant maintains that the grant could not be accounted an easement, for since the turnpike company only possessed a right of way it could not create an easement thereon. A turnpike company may acquire and hold the fee in the bed of its road: 29 Am. & Eng. Ency. of Law (2d. ed), p. 4; and there was no evidence that the present turnpike was not so owned. However, strictly speaking, the gas company's rights

cannot be properly classed as an easement, for in order to create an easement there must be a dominant and a servient tenement: Lehigh & New England R. R. Co. v. Bangor & Portland Ry. Co., 228 Pa. 350; Dark v. Johnston, 55 Pa. 164. But no matter how it may be classed, the gas company and its "successors and assigns," having received "a right of way" the continuing consideration to be rendered by it having expressly been made assignable, and the grant having been acted upon, the covenant of the grantee to render the stipulated consideration is binding upon it so long as the pipe line remains undisturbed.

It will not do to say that the turnpike company had no power to grant a right of way beneath the surface of the road. The gas company, having accepted the right of way with the obligation to surrender it upon a failure to comply with the conditions of the grant, so long as undisturbed possession is enjoyed, is estopped from questioning the power of the turnpike company to make the grant. The principles governing this rule of estoppel are discussed in Neglee v. Ingersoll, 7 Pa. 185; Osterhout v. Shoemaker, 3 Hill, 513; Maltman v. Chicago, Milwaukee & St. Paul R. R. Co., 72 Ill. App. 378; Bedenbaugh v. Southern Ry. Co., 48 S. E. Repr. 53; Providence Gas Co. v. Thurber, 2 R. I. 15. Furthermore, looking at the matter from another point of view, it can make no difference whether or not the turnpike company had the power to grant a right of way. If it had only control over the turnpike and power merely to grant the privilege of breaking the surface, the gas company had to secure its permission before entering upon the road, and in the absence of any fraud or deception, if the gas company with its eyes open saw fit to agree to render a certain continuing consideration for the privilege it sought, then no matter what that privilege may be termed, so long as its fruits are enjoyed, the consideration agreed upon must be paid in accordance with the contract under which it was given.

The only question is, in law did the condemnation proceedings and the taking over of the road by the county disturb the gas company in its enjoyment of the benefits of the contract? In considering this question we must bear in mind that the turnpike was a public road when the contract was entered into, and that its character in that respect did not depend upon the condemnation of the turnpike company's rights: People's Telephone & Telegraph Co. v. Berks & Dauphin Turnpike Road, 199 Pa. 411; Pittsburg, McKeesport & Youghiogheny R. R. Co. v. Com., 104 Pa. 583. "The only object and effect of such proceedings was to free the road from tolls, and open it to public travel, as in the case of other country roads:" Phila., Newtown, etc., R. R. Co.'s App., 120 Pa. 90. But, the appellant argues that, since part of the old turnpike is now a city street, it is apt to be disturbed at any time. It is true that in Pennsylvania "a street in a city is subject to greater servitude in favor of the public than is a road in the open country. The city has the right to use . . . . a street to whatever depth below the surface it may be desirable to go for sewers, gas and water mains, and any other urban uses:" McDevitt v. People's Natural Gas Co., 160 Pa. 367; Sterling's App., 111 Pa. 35; Lockhart et al. v. Craig St. Ry. Co., 139 Pa. 419; Penna. R. R. Co. v. Montgomery County Pass. Ry. Co., 167 Pa. 62; 1 Lewis on Eminent Domain (2d ed.), 170. It is likewise true that a grant of authority to lay pipes in a street does not give a vested right to any particular part of the subsurface, the location being subject to changes as public convenience and security may require: 20 Cyc. 1156. However, according to the contract the appellant is obliged to furnish the gas only as "long as said pipes remain in said road;" and the pipes are still in the road. The appellant has not been disturbed, and so far as the record shows, there is no reason to believe that the public authorities desire to interfere with its right of way.

The assertion that the taking over of the turnpike by

the county ipso facto terminated the right of way granted to the gas company is not borne out by our cases. In Phila., Newtown, etc., R. R. Co.'s App., 120 Pa. 90, the appellant purchased a portion of a turnpike to serve as a right of way. No tracks were laid, and the railway company continued to collect tolls on the road until the turnpike was condemned under the act of 1887. An injunction was asked to restrain the condemnation on the ground that the appellant's right of way could not thus be interfered with. In affirming a refusal of the injunction we said: "The petitioners are not seeking to interfere with the right of the company to extend its tracks over the road, nor could such a proceeding be entertained under the act of 1887. We think that the appellants are needlessly alarmed at the effect of the action of the petitioners. It can result only in making it a free road until such time as the appellants are ready to lay down their tracks, when, if they show a legal right to so appropriate the road, it is difficult to see how this proceeding can affect them." In Germantown Passenger Ry. Co. v. Citizens' Passenger Ry. Co., 151 Pa. 138, prior to the condemnation the turnpike company had granted a right of way to a railway company, and, in referring to the rights of the latter, we said: "The . . . . railway was required to compensate and did compensate the turnpike company for the use of its road. Afterwards, . . . . the city . . . . succeeded to the rights of the turnpike company, but that, of course, cannot injuriously affect the rights of the railway company previously acquired and paid for." It is clear from these cases that the condemnation of the turnpike did not in itself deprive the appellant of its right of way. It still has all the rights it enjoyed before, subject to the rights of the public; and it is not necessary to decide now the extent of these latter rights as they may never affect the appellant. It will be time enough to do that when the appellant is actually disturbed in the enjoyment of its right of way.

The case of Ridge Ave. Pass. Ry. Co. v. Phila., 181 Pa.

592, cited by the appellant is not controlling here. That case decided that after the condemnation of a turnpike, the city had the right to change the grade of the road against the objection of a railroad company which had acquired its right of way prior to such condemnation. What we said there, to the effect that the city did not take the street subject to indefinite liens or contracts made by the turnpike company in favor of other corporations, is not at all at variance with our other cases or with the view of the law expressed in this opinion; it is merely a recognition of the rule that after the condemnation of the road the right of way of the railway company was subject to such reasonable control as might be required for the convenience and security of the public.

It is to be noted that the record not only fails to show any express attempt to interfere with the rights of the appellant, but there is a finding by the court below, which was not excepted to, to the effect that "the easement of the gas company was not condemned by the county, the condemnation being subject to the same." And it appears that the road jury's attention was directed to the fact of the existence of the so-called easement, and that it was left to them to consider its effect upon the value of the turnpike. See Perkiomen & Reading Turnpike Road v. Berks County, 196 Pa. 21.

We conclude that; since the appellant is still in the undisturbed enjoyment of the right of way, it must continue to render the consideration stipulated in the contract.

The assignments of error are overruled and the decree is affirmed.