## The Western New York and Pennsylvania Railway Company *v.* Buffalo, Rochester & Pittsburg Railway Company, Appellant.

*Railroads—Crossings—Equity—Preliminary injunction.*

A railroad company was incorporated to construct a railroad with a three feet gauge. Subsequently it granted to another railroad company the right to cross its tracks. Some years after this agreement was made it consolidated with a third company, and the consolidated company sought to widen the gauge from three feet to four feet eight inches. The company to which the right of crossing had been granted resisted the attempt to widen the gauge and the consolidated company thereupon filed a bill for an injunction. *Held,* that a preliminary injunction should be continued, restraining the defendant from interfering with the widening of the gauge until final hearing.

Argued May 4, 1898. Appeal, No. 455, Jan. T., 1898, by defendant, from decree of C. P. McKean Co., June T., 1897, No. 2, in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Bill in equity for an injunction.

The facts appear by the opinion of OLMSTED, P. J., which was as follows:

The Olean, Bradford & Warren Railroad Company was incorporated on September 29, 1877. It was incorporated for the purpose of constructing a railroad from Olean, in the state of New York (or the state line near Olean), by way of Bradford, to Warren, in the state of Pennsylvania. The gauge of their road was to be three feet. It was soon afterwards constructed and operated as a narrow gauge railroad. Sometime prior to 1882, the Rochester & Pittsburg Railroad was incorporated by the state of Pennsylvania. This road was soon after constructed and operated from Rochester, in the state of New York, by way of Bradford, in the state of Pennsylvania, to some point or points south or southwest of Bradford, in Pennsylvania. By various transfers and charters not necessary to detail in this case, the road became the Buffalo, Rochester & Pittsburg Railroad, and is operated under that name, and as such is made

defendant in this case.   It appears from the evidence that it
was deemed necessary by the directors of the Rochester & Pitts-
burg Company that it should cross the Olean, Bradford &
Warren Railroad at a point near the city of Bradford, the
present point of controversy.   Legal proceedings were insti-
tuted, and on June 17, A. D. 1882, a contract or agreement
was entered into between the Olean, Bradford & Warren Rail-
road Company, of the one part, and the Rochester & Pittsburg
Railroad Company, of the other part, upon the subject of this
crossing (see contract given in evidence in this case), and by
this contract the Rochester & Pittsburg were permitted to cross
the Olean, Bradford & Warren Railroad at a point within eight
hundred feet easterly from the station of the Olean, Bradford
& Warren Railroad at Bradford.   This contract contained other
matters not essential to the matter in controversy in this case.
This crossing was constructed and operated up to the present
hour.

It appears from the voluminous evidence upon the subject
that in various ways the Olean, Bradford & Warren Railroad
became merged in the Western New York & Pennsylvania
Railway Company, party plaintiff in this case.

I do not deem it necessary to go over the evidence of the
various proceedings that resulted in the ownership by the West-
ern New York & Pennsylvania Railway Company of the Olean,
Bradford & Warren Railway.   The various proceedings, al-
though not given in evidence consecutively, seemed on the trial
to be in accordance with the powers of railroad corporations, as
given by our many statutes upon the subject, and it seems still
further unnecessary as the averments of the same, as contained
in the eighth paragraph of the plaintiff's bill, are not denied in
the answer clearly and distinctly.

It may be conceded that the Olean, Bradford & Warren Rail-
road had the first right and the first constructions and opera-
tions at the point where this contention arises.   This corporation,
however, yielded certain rights and privileges to the Rochester
& Pittsburg corporation by the contract of June 17, 1882, but
this right or privilege, broadly stated, was merely to cross their
track, under certain restrictions contained in the contract.   All
other rights, powers and privileges given them by the various
statutes of the commonwealth remained unaffected by the con-

tract, and all the rights, powers and privileges granted by the commonwealth charter to the Olean, Bradford & Warren Railroad were vested in the Western New York & Pennsylvania Railroad, and when the Western New York & Pennsylvania sought to widen the gauge at the point in controversy it had the full right to do so that would have been in the Olean, Bradford & Warren had no merger ever taken place. It appears then, that on May 6, A. D. 1897, when the plaintiff sought to widen its gauge at the point in controversy, it had the full right to do so given by our statutes, except as affected by the contract of June 17, 1882, and the corporation defendant had such powers as are given by our statutes, limited and affected by the same contract with the Rochester & Pittsburg, having succeeded to its rights.

It is averred in the plaintiff's bill, and not denied by the defendant's answer, that on May 6, 1897, the plaintiff sought to widen its gauge from three feet to four feet eight and one half inches at the point where the Rochester & Pittsburg obtained the right to cross the track of the Olean, Bradford & Warren Railroad by the contract of June 17, 1882, and were prevented by the corporation named as defendant in this bill.

The plaintiff, on May 5, 1897, then filed this bill, praying for an injunction to restrain the defendant from preventing the plaintiff from widening its gauge at the point in controversy (a somewhat awkward way of reaching the question), and on the same day, a rule to show cause why injunction should not issue, was allowed by the court, returnable May 11.

On May 11 (the return day of this rule) the parties appeared by their counsel, and it was agreed that the hearing then should take place as though a preliminary injunction had been issued, and the hearing be to decide whether or not it should be made permanent, whereupon the parties proceeded with the evidence as reported by the stenographer.

Had the Olean, Bradford & Warren the right, after the contract of June, 1882, to widen its gauge? And if it had that right, is that right now vested in the corporation plaintiff? These seem to be the only questions involved in the case.

The Olean, Bradford & Warren was chartered and constructed as a three feet gauge. It is now sought to make the gauge four feet, eight and one half inches. The Act of April 11, 1853,

P. L. 366, enacts as follows : " That any railroad heretofore chartered is hereby authorized to construct or change their gauge, or gauges, of road to such a width as the directors of such railroad company may deem expedient, and all laws inconsistent with this provision be and they are hereby repealed." This act is followed by the Act of March 17, 1869, P. L. 12, which provides as follows : " That it shall and may be lawful for any railroad, canal and slack-water navigation company, now or hereafter incorporated by or under any law of this commonwealth, to straighten, widen, deepen, enlarge and otherwise improve the whole or portions of their lines of railroads . . . . whenever, in the opinion of the board of directors of any such company, the same may be necessary for the better securing the safety of persons and property and increasing the facilities and capacity for the transportation of traffic thereon."

·The legislature could not have employed language that more clearly, distinctly and unequivocably granted the right to widen the gauge of a railroad then constructed, or thereafter constructed. No citation of authorities or argument upon this point is necessary.

The second question seems to us equally clear and free from doubt.  The Act of May 16, 1861, P. L. 702, provides : " That it shall be lawful for any railroad company chartered by this commonwealth to merge its corporate rights, powers and privileges into any other railroad company so chartered, connecting therewith, so that by virtue of this act, such companies may be consolidated, and so that all the property, rights, franchises and privileges then by law vested in such company so merged may be transferred to and vested into the company unto which such merger may be made."

Many subsequent acts of assembly have been passed to facilitate the transfer and consolidation of railroads, all asserting and reasserting that the property, rights, franchises and privileges of the merged company shall thereby vest in the company into which the other company is merged.   I cannot find room for doubt that the Western New York & Pennsylvania Railway have precisely the same rights and legal powers in this controversy as the Olean, Bradford & Warren would have had if no merger had taken place.   This brings us to the question whether the Olean, Bradford & Warren lost its rights to widen its gauge

by reason of the contract of June 17, 1882. After a careful consideration of this agreement I find nothing therein contained which can be construed, either by a reference to its language or any legitimate inference from its purpose and scope that should be given any effect beyond the one so plainly expressed by its language, to wit: The right to the Rochester & Pittsburg to cross the track then operated and owned by the Olean, Bradford & Warren at a designated point, and under certain limitations and conditions. The directors of the Rochester & Pittsburg knew, as they were bound to know, that the directors of the Olean, Bradford & Warren had the right at any time to widen the gauge, either of the whole or any portion of this road. Surely, if they intended to require the Olean, Bradford & Warren to barter away that important right (important to them and the general public) they would have expressed it in unmistakable language.

If the Rochester & Pittsburg had been in possession of the disputed point, operating a railroad thereon, and the Olean, Bradford & Warren, with a subsequent charter, had approached it, asking to cross it with a three feet track, the case would have presented another and perhaps more difficult question. It would then have presented the question argued by the able counsel for the defendant, and to which the authorities therein cited are to some extent applicable.

It is not by reason of the terms of the contract of June, 1882, that the Olean, Bradford & Warren obtained the right to widen its gauge at the point in dispute, but under the general law of the commonwealth, which right still remains applicable to that road, notwithstanding the contract.

The copy of the contract of June 17, 1882, given in evidence, does not appear to have been signed by the officials of the Olean, Bradford & Warren. It was signed by the other party, passed to the custody of the proper officers of the Olean, Bradford & Warren, and by them is presented on the trial. The contract was signed by one party, the party receiving the principal benefit under it, and delivered to the other party. Both parties acted under it, and it has gone fully into effect, the defendant getting and exercising the right granted to it, and holding the right up to the present hour. It hardly seems necessary to cite authorities to show that this contract is binding upon both parties, at this late date.

An ingenious argument is presented to us to demonstrate that since the passage of the act of 1875, regulating the amount of stock to be subscribed and paid in, as a condition precedent to obtaining a charter for a narrow gauge road, requiring a less amount than is required for a standard gauge; a narrow gauge cannot therefore be widened, for the reason that it might result in the existence of standard gauges with the limited amount of stock required for a narrow gauge. This state of things might, of course, occur, but how can the public be injured thereby; the cost of widening would have to be borne by the stockholders of the widened road, and as the statute limits the number of bonds to be issued by a railroad corporation, the amount of stock actually paid in would be unaffected; nobody could be affected by the transaction but the corporation itself.

The legislature upon this subject might not have been wise (a question we are not now to decide) but as the whole matter was and is within the domain of legislative power, this difficulty (if it is a difficulty) does not affect the statutes giving the railroad corporations the power to change their gauges.

We are of the opinion that the plaintiff is entitled to the relief prayed for in the bill filed in this case.

The court entered the following decree:

This cause having been duly heard and argued by counsel and upon consideration thereof it is ordered, adjudged and decreed as follows, to wit: that the said defendant, the Buffalo, Rochester & Pittsburg Railway Company, its agents, officers, servants and employees be restrained until final hearing or further order of court, from in any manner interfering with the plaintiff, the Western New York & Pennsylvania Railway Company, its agents and employees, in putting in a four foot eight and one half inch, or standard gauge, crossing, or in any manner interfering with, or in any manner preventing, directly or indirectly, the putting in of said crossing in a safe and suitable manner, at the point designated in the contract bearing date June 17, 1882.

*Error assigned* was decree of the court.

*Robert L. Edgett,* of *Berry & Edgett,* and *John G. Johnson,* with him *C. H. M'Cauley,* for appellant.—A preliminary in-

junction is only a preventive remedy. It will not be granted where there is a dispute as to rights, and then only to prevent an irreparable injury: Mammoth Vein Coal Co.'s App., 54 Pa. 183; Paton v. Clark, 156 Pa. 49; Shroder's App., 1 W. N. C. 528.

*John J. Henderson*, with him *Eugene Mullin*, *C. S. Cary* and *Frank Rumsey*, for appellee.

PER CURIAM, May 16, 1898:

This appeal is from the decree of the court below restraining the defendant company from in any manner interfering with the plaintiff company in any of the matters therein specified " until final hearing or further order of court."

We find nothing in the record that requires either a reversal or modification of the interlocutory decree ; and, adhering to our usual practice in such cases as this, we express no opinion on any of the questions that are now presented, other than that necessarily implied in the affirmance of the interlocutory decree. As the case progresses to final decree, other questions may arise and become important factors in the final decision of the cause.

Decree affirmed and appeal dismissed at appellant's costs.