## Lehigh Valley Railroad Co. v. Schuylkill Railway Co.

*Otto E. Farquhar*, for plaintiff; *A. S. Shay*, for defendant.

BECHTEL, P. J., Dec. 19, 1927.—The plaintiff filed its declaration in this case, wherein, after setting forth that the parties to the action are corporations, it is averred, *inter alia*, that the tracks of the defendant company cross the tracks of the plaintiff on the public highway in the Borough of Ashland.

That the crossing was originally constructed under an agreement dated Nov. 26, 1892, between the Lehigh Valley Railroad Company and the Philadelphia & Reading Railway Company, lessee, and the Schuylkill Traction Company, lessee of the Mahanoy City, Shenandoah, Girardville and Ashland Street Railway Company.

That the said Mahanoy City, Shenandoah, Girardville and Ashland Street Railway Company leased unto the Schuylkill Traction Company its railway, including said crossing, by lease dated Jan. 6, 1893.

That by deed of release, dated April 12, 1905, the Schuylkill Traction Company surrendered unto the Mahanoy City, Shenandoah, Girardville and Ash-

land Street Railway Company the railway leased unto it under the said lease of Jan. 6, 1893.

That by deed dated April 12, 1905, the Mahanoy City, Shenandoah, Girardville and Ashland Street Railway Company conveyed unto the Schuylkill Railway Company, the defendant above named, its street railway, including said crossing. These different leases were duly recorded.

That from the date of the installation of the crossing until April 12, 1905, the Schuylkill Traction Company continuously operated its cars over the same. From that date, the defendant company has continuously and is now operating its cars over said crossing and from time to time maintains and repairs the same.

That under the agreement of Nov. 26, 1892, it became the duty of the party of the second part to maintain said crossing.

That by reason of the fact that the defendant company, since it acquired the street railway under the lease of 1905, as aforesaid, has continuously used said crossing and from time to time repairs the same, it, therefore, obligated itself to maintain said crossing according to the terms of said agreement of Nov. 26, 1892.

That the defendant company failed to keep the frogs and other equipment in said crossing in good repair, and that the same, on or about October, 1921, impeded and made unsafe the operation of the plaintiff company's trains over said crossing; whereupon the said plaintiff company was compelled to place new frogs in said crossing, for which the defendant refused to pay, hence this suit.

To this statement of claim an affidavit of defense has been filed raising questions of law. The defendant claims that the plaintiff is subject to have its railroad crossed by other railways whenever the public's interest requires such crossing. The place and manner and expense of same are not matters of private contract. No contract between railway parties can be made except subject to the right of the public to have these matters regulated under the Act of June 19, 1871, P. L. 1361, and the Act of May 14, 1889, P. L. 211.

It is also averred that the plaintiff's statement is insufficient, in that it does not aver which company caused the frog to require repairs. It is claimed that the defendant was not a party to the original contract, and, hence, is not bound to maintain the crossing.

It is also claimed that the contract is *nudum pactum* lacking consideration. The Act of 1871, *supra*, provides, *inter alia:* "When such legal proceedings relate to crossing of lines of railroads by other railroads, it shall be the duty of courts of equity of this Commonwealth to ascertain and define, by their decree, the mode of such crossing which will inflict the least practical injury upon the rights of the company owning the road which is intended to be crossed; and if in the judgment of such court it is reasonably practicable to avoid a grade crossing, they shall by their process prevent a crossing at grade."

The Street Railway Act of May 14, 1889, § 18, P. L. 211, provides: "Any company incorporated under the provisions of this act shall have the right, in its construction, to cross at grade, diagonally or transversely, any railroad operated by steam or otherwise now or hereafter built."

In the case of Western New York & Penna. Ry. Co. *v.* Buffalo, Rochester & Pittsburgh Ry. Co., 193 Pa. 127, it is said: "The learned judge below was entirely correct in holding that the Act of June 19, 1871, § 2, P. L. 1361, in relation to the regulation of grade crossings by courts of equity, did not control this case. The Olean, Bradford & Warren was the first, and the appel-

lant, being the second comer, was bound to exercise its rights in subordination to the prior rights of the Olean, Bradford & Warren. Under the contract of 1882, however, the appellant acquired a status as to the existing crossing of which it has the burden of maintenance."

This is cited approvingly in the case of Park Steel Co. v. Railway Co., 213 Pa. 322.

In Lehigh & N. E. R. R. Co. v. Del., L. & W. R. R. Co., 240 Pa. 401, it is said: "Railroad companies, as between themselves, may lawfully contract for the manner in which expenses of repair and maintenance of crossings of extensions shall be borne, but such contracts will relieve neither from answer to the Commonwealth for default."

It will be noted in this case that while the defendant was not a party to the original agreement by virtue of which the grade crossing was established, still that crossing was incident to the construction and building of the road which defendant operates, and, under the plaintiff's statement, which must be taken as true for the purposes of this case, it is alleged that the defendants took over said crossing, operated it and from time to time maintained and repaired the same. There can be no doubt that the crossing was built for the accommodation of the owners of the defendant company. While it may be true, as alleged by counsel for defendant, that it could have compelled the plaintiff to permit the crossing of its tracks, for which reason, he contends, the agreement is *nudum pactum*, still it is equally true that an agreement was entered into by the owners of the railway for the construction of the grade crossing. This crossing was taken over by the defendant company in 1905. It operated it, maintained it and enjoyed all the rights and privileges flowing therefrom. It was entirely for its benefit. The plaintiff company derived no benefit from the crossing at all. Under these circumstances, it seems to us that, even though it be true that the defendant company might have compelled the plaintiff to permit the crossing of its tracks, since that crossing was for its benefit and since it ratified the obligation of the agreement by the use, enjoyment and maintenance of the crossing, it cannot now be heard to disavow its liability for the maintenance of the same or failure of consideration in the agreement made.

In 13 Corpus Juris, § 824, page 714, it is said: "It has been held that one who knowingly accepts the benefits intended as the consideration coming to him under a contract, voluntarily made by another in his behalf, becomes bound by reason of such acceptance to perform his part of the contract."

This doctrine is dwelt upon at considerable length in the case of the Suburban Traction Co. v. Gas Company, 230 Pa. 109, wherein it is said: "It will not do to say that the turnpike company had no power to grant a right of way beneath the surface of the road. The gas company, having accepted the right of way with the obligation to surrender it upon a failure to comply with the conditions of the grant, so long as undisturbed possession is enjoyed, is estopped from questioning the power of the turnpike company to make the grant."

It does not seem unreasonable that the company for whose benefit the crossing was installed and existed should be the one to maintain it and keep it in repair.

In the case of Schweikert v. Mahoning & Shenango Railway and Light Co., 3 D. & C. 157, it was held:

"When the railroad has laid its tracks across a public highway and a street railway company subsequently desires to cross the same on said high-

way, it is the duty of the street railway company to install and maintain the crossover.

"A company operating the tracks of a street railway company is presumed to have covenanted to keep the same in repair, and, unless it produces a contract to the contrary, this presumption is conclusive."

It seems to us that these authorities dispose of all of the points raised by defendants' affidavit of defense after considering the same *seriatim*. We are, therefore, of the opinion that the amended affidavit of defense raising questions of law should be overruled.

Defendant's affidavit of defense raising questions of law is herewith overruled and defendant is hereby given fifteen days from this date to file its affidavit of defense on the merits of the case.

From M. M. Burke, Shenandoah, Pa.