# Nanticoke Bridge.

*Bridges—Eminent domain—Condemnation—Railroad—Toll bridge—Acts of June* 14, 1873, *P. L.* (1874) 421, *and May* 8, 1876, *P. L.* 131.

A bridge built by a corporation under the Act of June 14, 1873, P. L. (1874) 421, authorizing the construction thereof "for railroad, wagon and other purposes," and also authorizing a charge of toll "for the use thereof," cannot be condemned by the county, where it appears that the corporation occupied the entire bridge with the tracks of a railroad, and only permitted the use of it to the public generally as a toll bridge, when it was not in actual use for railroad purposes.

Submitted March 4, 1909. Appeal, No. 45, March T., 1909, by R. R. Jones et al., from order of Q. S. Luzerne Co., dismissing petition to appoint viewers In re Acquisition by the County of Toll Bridge at Nanticoke, Pa. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Petition to appoint viewers to assess damages for the freeing of a bridge. Before FULLER, J.

The opinion of the Superior Court states the facts.

The court in an opinion by FULLER, J., dismissed the petition.

*Error assigned* was the order of the court.

*Thomas Butkiewicz, Jr.,* and *Charles F. McHugh,* for appellants.—An act granting corporate privileges to a body of men is, when accepted, a contract between the state and the corporation: Erie & North West R. R. Co. v. Casey, 26 Pa. 287; Clarion Turnpike & Bridge Co. v. Clarion County, 172 Pa. 243; Penna. R. R. Co. v. Com., 3 Grant, 128; Phila. etc., R. R. Co.'s App., 120 Pa. 90.

The doctrine is well settled that it is an incident to the sovereignty of every government that it may take private property for public use, and that the exercise of this power is not in conflict with the constitution of this state or of the United States.

It seems to be equally well settled that the state cannot part

with, sell or abandon its right of eminent domain: Branson v.
Philadelphia, 47 Pa. 329; In re Twenty-Second Street, 102 Pa.
108; Com. v. Canal Co., 66 Pa. 41; Bridge Co. v. Clinton County,
157 Pa. 379; Philadelphia, etc., Ry. Co.'s App., 102 Pa. 123; In
re Towanda Bridge Co., 91 Pa. 216; Bank v. Com., 10 Pa. 442.

The power of the state to dedicate for public use a right
granted, when the necessity for public use and the burdensome-
ness of the rights granted are established, is necessary to the
very existence of our form of government, and is to be con-
strued strongly in favor of the public.

*F. W. Wheaton* and *Henry W. Palmer*, for appellee.—This
appeal is in effect a certiorari, because the proceedings are
statutory, and no appeal is given by the statute. The case is
not open to review on the merits. Treating it as in the nature
of a summary petition, however, the appellate court will not
stop at a mere inspection of the docket entries, or the formal
proceedings, but will look at the opinion, as well as the action of
the court below, to see the basis on which it acted: Krickbaum's
Case, 221 Pa. 521.

Corporate franchises, although held and enjoyed under a
charter which contains no reserved power of alteration or re-
peal, may be taken under the power of eminent domain. But
in order that the power may be exercised in a particular in-
stance, it must be granted in express terms, or by necessary
implication: Appeal of Groff et al., 128 Pa. 621; Groff v. Turn-
pike Co., 144 Pa. 150.

OPINION BY HEAD, J., July 14, 1909:

The respondent in this proceeding is a railroad company duly
incorporated under the laws of this state. It owns, and through
its lessee, operates a line of railroad in a busy and populous
section of the commonwealth. A portion of its line is carried
over the Susquehanna river by a bridge owned by it. This
bridge was built by its predecessor in title, under the authority
of the Act of June 14, 1873, P. L. (1874) 421, which authorized
that company, inter alia, "to connect their property on the op-
posite sides of the Susquehanna river . . . . by the construc-

tion of a bridge for railroad, wagons, and other purposes, and to charge toll for the use thereof."

The bridge was so built that the several legislative purposes might be subserved, at least to some extent. It appears to be undisputed, and the court so finds, that the tracks of the railroad company occupy the entire bridge, and consequently when the bridge is in actual use for railroad purposes, the general traveling public are necessarily excluded therefrom. When not in actual use for railroad purposes, the bridge is open to the public generally for the other purposes mentioned in the act, and the respondent charges toll to those who thus use it.

The petitioners, conceiving that this was a bridge which the county was authorized to "acquire" under the provisions of the Act of May 8, 1876, P. L. 131, filed their petition in the court of quarter sessions of Luzerne county, averring "that said bridge is necessary for the accommodation of the traveling public, and that the tolls collected for the use of said bridge are burdensome to the traveling public;" and praying "that said toll bridge shall be taken as a county bridge," and that viewers be appointed "to assess the damage, if any, which the said corporation shall sustain by the taking of the same."

The respondent filed an answer denying that under the facts disclosed by the petition and answer, of which there is no dispute, the petitioners had any legal right to proceed with the proposed condemnation. The learned court made an order refusing "to appoint viewers or proceed further with this petition," and the petitioners take this appeal.

One of the reasons specifically advanced by the respondent to induce the action taken by the court below was that the act of 1876 was not intended to, and does not operate upon a railroad bridge in the actual use of a railroad company, even under the unusual circumstances incident to the construction and use of this particular bridge. If this contention be sound the case of the petitioners must fall and there will be no occasion to examine or consider the effect of the former action of the court on a similar petition signed by other citizens.

We do not think the solution of the exact question now before us requires us to consider or determine some of the broad

questions so ably presented in the appellant's printed brief. As we view the case, we are not concerned with the question whether or not the state has power to condemn a part of the right of way of a railroad company, for the purpose of subjecting it to other forms of public travel. The answer to the question before us, we think, can be found in an examination as to what the state, by its legislation, has done, rather than by an investigation of the things which the exercise of its sovereign power might enable it to do. For it is clear enough that if the act of 1876 did not intend to confer upon a county the right to take a bridge under the conditions presented by this record, the action of the court below was correct.

The pith and marrow of the question now before us are contained in the first contention stated by the appellant's counsel in their printed brief in the following language: "That the railroad company holds this bridge in a dual character—that of a railroad company for the purpose of transferring freight and coal thereon—and as a bridge company for the use of the traveling public, with power to charge tolls thereon. Then the act of 1876 applies only to the right of user as a toll bridge for the general traveling public."

To the first part of this contention we readily accede. There is authority for saying that where such a dual relation exists, and the rights of the railroad company in the bridge, turnpike or highway are yet potential rather than actual, while the other franchise of taking tolls for passage over such bridge or highway is alone in activity, the law has provided a means by which such franchise can be taken over by the county, and the highway thus made free for ordinary travel as against the franchise of the company to take toll therefor. By the act of June 2, 1887, a method was provided by which the proper county could take over for public use, and make free from tolls and tollgates, any turnpike, road or highway, the county paying the necessary damages to the owners thereof.

In Phila., etc., R. R. Co.'s Appeal, 120 Pa. 90, it appeared that a duly incorporated railroad company had become, by purchase, the owner of a section of a turnpike road, for the purpose of utilizing it at some time in the future as a part of its roadbed

to enable it to obtain entrance into the city of Philadelphia. Until the time was ripe for the construction of such railroad, the turnpike was maintained as it had been as an ordinary public highway, and the railroad company, by virtue of legislative authority, continued to take tolls from those who passed over it. A proceeding was begun under the act of 1887, supra, to open this road to public travel. The railroad company objected that the act quoted did not intend that there should be taken from a railroad company a portion of its right of way in order to establish thereon a highway for ordinary travel. In disposing of that question, the Supreme Court, speaking through Mr. Justice PAXSON, used this language: "The answer to this is that they (the railroad company) hold this portion of the road in a dual character: first, as a railroad company for the purpose of laying down its tracks thereon; and second, as a turnpike company for the purpose of collecting tolls. It is only as to the use last stated that these proceedings are directed. The petitioners are not seeking to interfere with the right of the company to extend its tracks over the road, nor could such a proceeding be entertained under the act of 1887. We think the appellants are needlessly alarmed at the effect of the action of the petitioners. It can result only in making it a free road until such time as the appellants are ready to lay down their tracks, when, if they show a legal right to so appropriate the road, it is difficult to see how this proceeding can affect them." If this language means anything, it must mean that had the railroad company then been in the active exercise of its potential right to lay and operate railroad tracks along that highway, the road, under such conditions, would have been removed from the class of roads on which the act of 1887 intended to operate, and the proceeding would have been nugatory.

We must recur then to the peculiar conditions incident to the bridge in question. The objects which the legislature had in view in authorizing its construction were, in the order named in the act, railroad purposes, wagon travel, and other purposes. As already stated, it has been so constructed and used as to subserve these various purposes, apparently in the order of importance in which they were viewed by the legislature. Are

we then warranted in saying with the learned counsel for the appellant that the act of 1876 applies only to the right of user as a toll bridge for the general traveling public? We may concede that the legislature could, had it chosen to do so, have enacted a law by which a county could purchase and take over a partial interest in the bridge of a railroad company and extinguish any franchise such company might have to take tolls for such use, leaving to the company the right to control and use the bridge, as its public obligations might require, for railroad purposes. We cannot agree that the act of 1876 conferred, or was intended to confer, any such right. The act is entitled, "An Act to authorize the acquisition by the several counties of this Commonwealth, for the use of the county, of bridges," etc. The bridges that may be acquired under the act are those of "any turnpike road company, bridge company, or other corporation." How should we construe the expression "or other corporation"? If we say with the appellant that it means every other corporation of any kind or description, the previous qualifying expressions, to wit: "turnpike road company, bridge company," become entirely meaningless and are given no effect whatever. Moreover, as we shall presently indicate, such a construction of the expression read into the entire body of the act would produce a state of confusion which it is hard to believe the legislature contemplated. Still further, it is to be observed that the two kinds of companies specifically mentioned are those maintaining a public highway devoted only to travel of the ordinary character, and not previously dedicated to public use for a special kind of travel. On the other hand, if we apply the rule of ejusdem generis so that the expression would practically read "or other like corporation," then we are able to give meaning to all of the language used by the legislature and can read the entire act as a harmonious whole. The act further provides, inter alia, that the damages which are to be assessed as the price or value of the bridge to the owners "shall be payable out of the county treasury, and the said bridges shall be taken possession of by the county commissioners and shall thenceforth be declared to be county bridges."

These provisions, and indeed the whole structure of the act,

seem to us to clearly declare that the legislature contemplated no divided ownership or control of such a bridge between the county and the railroad company. If the right of the company to own, to use, and to operate that bridge in discharge of its charter obligations to the state cannot be acquired and taken over by the county, this bridge is not within the purview of the act of 1876. When a bridge, in contemplation of the act, is acquired by the county it passes into the sole possession and control of the county. The money of the public paid to the former owner is the price of that ownership and is to be accepted in lieu of it. The county is not authorized to enter into a partnership or become a tenant in common with a railroad corporation in the use, ownership and control of a county bridge. There is no provision in the law for a division of the responsibility which comes with the right to own and the duty to maintain a bridge for public travel.

The responsibilities which the law imposes upon common carriers of freight and passengers are so weighty that they could not be successfully discharged if the duties of maintenance, repair and regulation of travel over a bridge like that in question were to be divided between a railroad company and a quasi municipality like a county. It would be easy to present many illustrations of the impracticable conditions that would result and the consequent dangers that would flow therefrom to the public, if we were to hold that the bridge in question was a proper subject of partial condemnation by the county under the act of 1876, but it would needlessly prolong this opinion.

For the reasons we have attempted to suggest, we conclude that the learned court below was right in refusing "to appoint viewers or proceed further with this petition."

Decree affirmed and appeal dismissed at the costs of the petitioners.